Brager, Respondent, vs. The Milwaukee Electric Railway & Light Company, Appellant.

*December 3, 1935—January 7, 1936.*

For the appellant there was a brief by *Shaw, Muskat & Paulsen* of Milwaukee, and oral argument by *Carl Muskat.*

For the respondent there was a brief by *Gold & McCann,* attorneys, and *John C. Love* of counsel, all of Milwaukee, and oral argument by *Mr. Love.*

ROSENBERRY, C. J.  It is the first contention of the defendant upon this appeal that the evidence fails to sustain the verdict of the jury which found the motorman negligent with respect to the speed at which he operated the car.  From the testimony of the conductor and motorman it appears that the car was traveling from fifty-five to sixty miles per hour. An engineer of the defendant company testified that the car under the conditions then existing had a maximum speed of fifty-seven miles per hour.  The only evidence which tended to contradict this was that of one Harry Smith, who was at a point over five hundred feet distant, working on the Brager lot, who testified that he should say the car was traveling about seventy-five miles per hour.  The finding of the jury to the effect that the motorman was negligent in the control of his car is based upon the testimony of the same witness, who testified that the car did not slacken speed.  The verdict, both as to the speed of the car in miles per hour and control of the car, rests upon a very dubious foundation, to say the least.  If excessive speed were established it was not necessarily negligent.  See *Shaffer v. Minneapolis, St. P. & S. S.*

*M. R. Co.* 156 Wis. 485, 145 N. W. 1086; *Jordan v. Osborne,* 147 Wis. 623, 133 N. W. 32. However, we do not find it necessary in this case to determine whether or not the finding of the jury in respect to speed is sustained by the evidence.

It appears without dispute that from the time Hockett turned south on the Springdale road he proceeded southerly, without ever slackening his pace, to the point where the truck was struck by the defendant's car. Four witnesses, the motorman, the conductor, and two disinterested passengers, saw the situation created by the oncoming truck. The motorman, as he had a right to do, assumed that Hockett, traveling at a comparatively slow rate of speed, would stop his car in a place of safety. As soon as he was able to discern that there was a liability of Hockett proceeding without stopping, he commenced to apply the brakes of his car. This fact is established by all the credible evidence in the case. There were warning lights at the crossing, there was the usual "Look Out For the Cars" sign, the whistle was blown, the gong was sounded, and the noise of the car itself would have given considerable warning to a traveler on the highway who was paying the slightest attention to his surroundings. It is uncontradicted that as the interurban car approached the crossing, the occupants of that car could see the truck and observe its movements. It is equally apparent then that the movements of the interurban car were plainly observable by the occupants of the truck. The undisputed evidence shows that the crossing was open and unobstructed except by the substation, which was no obstruction to the vision of those in the interurban car. Neither Hockett, the driver, nor Brager, the deceased passenger, of the truck, ever turned to look. It appeared to those in the interurban car as though Hockett and Brager were engaged in conversation, and for that reason totally oblivious of the approach of the interurban car. The failure of Hockett to stop his truck, as

the motorman had the right to assume he would do, created an emergency with which the motorman attempted to deal to the best of his ability. He says that he applied his brakes in an attempt to stop the car. In this he is corroborated by the conductor and his passengers. In any event it must be perfectly obvious that the legal cause of the injury to the deceased Brager was the failure of Hockett to stop his truck.

This court has held that under such circumstances the speed of the other vehicle, whether it be a railway train, an interurban car, or an automobile, is not a proximate cause of the injuries sustained. Excepting that the defendant is an interurban railroad instead of a steam railroad, this case is ruled by *Van Dunk v. Chicago & N. W. R. Co.* 188 Wis. 476, 206 N. W. 852. In that case the court said:

"It is argued by counsel for the plaintiff that it was the speed of the train and not any negligence of the deceased which caused the collision. It is not necessary to restate the facts bearing on this question. The jury found that the want of ordinary care on the part of the deceased proximately contributed to cause his death. The testimony is undisputed that the engineer did his utmost to avoid the collision when he saw the deceased. What might have happened if the train had been going more slowly would be pure speculation. We are convinced that the proximate cause of the tragic event was the want of care by the deceased already described."

*Clark v. McCarthy,* 210 Wis. 631, 246 N. W. 326, involved a head-on collision. It was argued in that case that the high speed of one car was a proximate cause of the accident. The court said:

"Assuming, without deciding, that the contention is sound and that the finding of the jury must be sustained, this finding would not be sufficient, standing alone, to support this judgment. When two cars proceeding upon a highway in opposite directions collide, the speed of either or both vehicles can only contribute to the accident in connection with some circumstance. For example, if the speed of the vehicle

contributes to want of control or to its presence on the wrong side of the highway, it may be considered one of the causes of the collision. It is difficult to see, however, how the mere speed of a vehicle can be a factor in such an accident, provided both cars maintain their proper place on the highway, and provided the highway itself is wide enough to permit them to pass each other without interference. Hence in this case we think the special verdict as to speed will not of itself support the judgment, and that it is necessary that plaintiff also show acts of negligence on the part of the defendant McCarthy which brought him onto the wrong side of the highway."

In this case the jury found that of all the negligence which brought about the accident, eighty per cent was due to Hockett's carelessness and twenty per cent due to the negligence of the motorman. As has been already indicated, the finding as to Hockett's negligence is based upon undisputed testimony, not only of the motorman, the conductor, and two passengers, but also of the witness, Harry Smith. With the exception that this case involves an interurban car instead of an automobile, it is, so far as legal cause is concerned, very similar to *Watkins v. Watkins,* 210 Wis. 606, 245 N. W. 695, where a truck suddenly turned across the path of an oncoming automobile. It was claimed in that case that the then speed of the oncoming automobile was the cause of the collision, the argument being that if the automobile had been driven slower the accident would not have happened. The court said:

"To say that this accident was caused by the failure of the defendant Watkins to have his car under control and maintain a proper lookout when up to the instant before the accident he had a clear right of way, traveling at a reasonable rate of speed on a dry concrete pavement, is pure speculation at best and wholly at variance with the established facts. . . . Had he maintained the most vigilant lookout he could have done nothing after Krahn turned his truck to the west. . . . There was no time for the brake if it had been perfect to function, much less to bring the car to a stop or substan-

tially slacken its speed. There was no reason for him to slacken his speed until the instant before the impact." See also *Royer v. Saecker,* 204 Wis. 265, 234 N. W. 742.

The only evidence in the case to sustain a finding that the motorman was guilty of any want of ordinary care in the management and control of his car is that of the witness, Harry Smith, who testified that the car did not slacken its speed. The testimony of this witness, who stood at a point more than five hundred feet distant from the point of the collision, that there was no deviation in speed amounts to this, that from his point of view he could determine that the car traveling at seventy miles an hour had failed to slacken its speed. This evidence we consider of no probative force as against the evidence of the motorman, the conductor, and the two passengers that the brakes were applied before the impact, and it raises no conflict.

In any event the motorman was required to deal with an emergency. It is undisputed in the case that he attempted to stop his car as soon as he discovered that Hockett did not intend to stop. While a high degree of care is imposed upon the operators of interurban cars, they are not required to perform the impossible. Traveling at sixty miles an hour, the interurban car was traveling approximately eighty-eight feet per second. Traveling at seventy miles per hour, it traveled approximately at the rate of one hundred and two feet per second. Traveling at fifteen miles per hour, the truck was traveling twenty-two feet per second. Manifestly, the interurban car could not have been far away from the point of intersection when it became apparent to the motorman that Hockett did not intend to stop. We can come to no other conclusion than that the legal cause of the injury sustained by the deceased in this collision was the negligence of Hockett. At whatever speed the defendant's car was traveling, the speed of the car had nothing to do with the failure

of Hockett to stop his truck, nor is there any evidence in the record that Hockett was in any way misled by the excessive speed of the defendant's car, if it was excessive. Hockett never made any calculations based on the speed of the defendant's car, because he never saw the oncoming car and was unaware of its approach. The speed of the car was not a legal cause of the accident, because Hockett would have driven his truck in front of the oncoming car under the circumstances at whatever speed the car was traveling.

*By the Court.*—Judgment appealed from is reversed, and cause remanded with directions to dismiss the complaint.