ROSWELL, Appellant, vs. CHICAGO, MILWAUKEE, ST. PAUL & PACIFIC RAILROAD COMPANY and others, Respondents.

*January 15—June 1, 1942.*

508

For the appellant there were briefs by *Grady & Fairchild* of Portage, and oral argument by *Daniel H. Grady.*

For the respondents there were briefs by *Bender, Trump & McIntyre* of Milwaukee and *Jesse E. Higbee* of La Crosse, and oral argument by *Mr. Rodger M. Trump* and *Mr. Higbee.*

The following opinion was filed February 10, 1942:

FRITZ, J. The plaintiff, Herbert S. Roswell, appeals from a judgment dismissing his complaint to recover damages sustained by him as a result of a collision at a railroad crossing between an automobile, which he was driving, and a train, consisting of a snowplow ahead of an engine and a caboose, operated by defendants' employees. The accident happened on February 28, 1939, at 6:30 p. m. The right side of plaintiff's car, which he was driving northward on Elm street in the city of Mauston, was struck by the snowplow as the train was moving westward on the northerly track of two tracks at that crossing. Defendants admitted that the train was going at twenty-five miles per hour; and because that was in excess of the twenty-mile statutory speed limit applicable at that crossing, the court, in submitting questions to the jury for a special verdict, directed a finding that the defendants' trainmen were negligent in respect to the speed at which the train was operated.

In answer to other questions submitted the jury found that the trainmen's negligence as to speed was a cause of the collision; that they were negligent in respect to maintaining a sufficient lookout and this negligence was also a cause of the collision; but that they were not negligent in respect to continuously ringing the engine bell within twenty rods of and until the crossing in question was reached, and in respect to having a lighted headlight on the snowplow. In relation to

the plaintiff the jury found that he was causally negligent in his course of conduct while approaching and advancing onto the crossing; that such negligence constituted more than a slight want of ordinary care; and that of the total causal negligence twenty per cent was attributable to plaintiff and eighty per cent was attributable to defendants. After the verdict plaintiff moved to have the court change the jury's findings in certain respects and also find that defendants' employees were guilty of gross negligence which caused the collision, and to have judgment entered on the verdict, so changed, for plaintiff's recovery of the amount of damages assessed by the jury. On the other hand, defendants moved in the alternative for judgment notwithstanding the verdict; or to have the court change the jury's answers by finding that the negligence of defendants' trainmen in respect to speed was not a cause of the collision, that they were not negligent in respect to lookout, and that there was no negligence in this respect which was a cause of the collision; or to have the court change the jury's finding as to comparative negligence by finding that plaintiff's causal negligence was fifty per cent or more of all such negligence and then to enter judgment dismissing the complaint upon the verdict as changed. The court denied all of plaintiff's motions, and also all of defendants' motions, excepting that the court ordered the verdict changed by finding that plaintiff's causal negligence was fifty per cent or more of all such negligence; and that upon the verdict so amended judgment be granted dismissing the complaint. Upon plaintiff's appeal from this judgment defendants filed a motion to review the court's denial of their motion to change the jury's findings that the trainmen's negligence as to speed was a cause of the collision, and that they were negligent as to lookout and that such negligence was also a cause, by substituting therefor findings that the trainmen were not negligent as to lookout and that neither negligence on their part in that respect or in respect to speed was a cause of the collision.

Plaintiff contends that the trainmen were guilty of gross negligence, as a matter of law, in intentionally operating the train at a speed in excess of the statutory limit of twenty miles per hour, which was applicable to the train while approaching and traversing the crossing in question, and that because of such gross negligence, contributory negligence on the part of plaintiff is not a defense, and, therefore, the defendants are liable to plaintiff for the loss caused by such negligence regardless of any contributory negligence on his part. This contention cannot be sustained in view of the well-established rule to the contrary which has been stated and approved repeatedly by this court. Thus, in *Brown v. Chicago & N. W. R. Co.* 109 Wis. 384, 389, 85 N. W. 271, the court said,—

"It is further contended that contributory negligence was not a defense, because the train that did the injury was running at an unlawful rate of speed and according to a custom of its servants known to and approved by it. It is argued that the injury to deceased, under the circumstances, should be considered as having been wilfully inflicted by the defendant. . . . There is no evidence here that the defendant saw the deceased in a place of peril and purposely or recklessly ran the train regardless thereof, nor that the train was operated with such an utter disregard of the safety of persons using the highway as to indicate a willingness to injure them. The evidence shows merely that the speed of the train was in excess of that allowed by law. That comes far short of showing actual or constructive intent to injure. The act was negligence *per se* . . . but not necessarily actionable negligence. . . . In the latter case [*Schneider v. Chicago, M. & St. P. R. Co.* 99 Wis. 378, 386, 75 N. W. 169] the point upon which appellant's counsel mainly rely here was urged upon the attention of the court, viz., that where a person is injured by the act of another that is prohibited by statute, the latter is liable to the former for the resulting damages regardless of the question of contributory negligence. The unlawful act involved was that of running a railroad train contrary to statutory regulations. The court decided that the legal restraint put upon a railroad company, as regards the running of its trains, does not relieve

a traveler upon the public ways from the duty to use ordinary care for his own safety; that such restraint goes no further than to render the company refusing or neglecting to submit to it liable to the penalty imposed, and to the charge of negligence as a matter of law in a civil action, leaving a person injured by reason of such negligence remediless the same as in any other case of negligence if he contributes to his injury by his own want of ordinary care. It seems that we need not say more in this case." See also *Ewen v. Chicago & N. W. R. Co.* 38 Wis. 613, 631; *White v. Chicago & N. W. R. Co.* 102 Wis. 489, 78 N. W. 585; *Ludke v. Burck,* 160 Wis. 440, 152 N. W. 190; *Bentson v. Brown,* 186 Wis. 629, 203 N. W. 380; *Hillside G. & T. Co. v. Pflittner,* 200 Wis. 26, 227 N. W. 282.

Moreover that contention is based upon the assumption that under the evidence in this case the negligence in operating the train in violation of the statutory speed limit can reasonably be found to have been a cause of the collision. Whether the excessive speed was a cause is sharply in controversy.

In contending that the speed was a cause, plaintiff argues that according to the testimony of defendants' superintendent Hancer, who was in charge of the train and keeping a lookout ahead, the plow was about one hundred feet from the crossing when plaintiff's automobile was first seen driving toward the tracks from behind a house on the south side thereof; that traveling that distance of one hundred feet at the legal speed of twenty miles per hour it would have taken the train 3.4 seconds, but that at thirty-five miles per hour it took only 1.9 seconds; that consequently if it had come at but the legal speed plaintiff would have had 1.5 seconds more in which to cross the track, and traveling at nine miles per hour he would have been nineteen and eight-tenths feet further north and safely across the track when the train reached the crossing; and that as plaintiff would then have passed beyond the zone of danger before the snowplow reached the point of collision, the speed of the train, being illegal, could be found to have been the proximate cause of the collision under the decisions in *Ewen v. Chicago & N. W. R. Co., supra; Piper v. Chi-*

*cago, M. & St. P. R. Co.* 77 Wis. 247, 254, 46 N. W. 165; *Ellis v. Chicago & N. W. R. Co.* 167 Wis. 392, 402, 167 N. W. 1048; *Shaver v. Davis,* 175 Wis. 592, 601, 185 N. W. 227. On the other hand, the defendants contend that by his own admissions, plaintiff's course of conduct at and just prior to the time of the collision, in failing to sooner see and hear the train and to stop before entering its pathway while approaching and advancing onto the crossing while it was one hundred feet away and approaching at twenty-five to thirty miles per hour, constituted such utter recklessness on his part that the accident was thereby rendered inevitable and would obviously have happened in the same way even if the train had been going at the legal speed of twenty miles per hour; and that therefore such negligent conduct on the part of plaintiff and not the negligence in operating the train in excess of the speed limit was the sole cause of the collision.

In passing upon those conflicting contentions it must be noted that the evidence fully sustains the jury's findings that the trainmen were not negligent in respect to the duty to continuously ring the engine bell within twenty rods of and until the crossing was reached, and to have a lighted headlight on the snowplow; and that, likewise, at and just prior to the time of the collision plaintiff was negligent in his course of conduct while approaching and advancing onto the crossing, and that such negligence was a cause of the collision, and constituted more than a slight want of ordinary care. These findings were returned by the jury under proper instructions by the court that the course of conduct in question was that which was involved in the duty of Roswell—

"to both carefully look and carefully listen to the right and to the left and ahead for the approach of any train upon the railroad track, and to continue to so look and listen up to the time of entering into and passing through the zone of danger;"

and "if on looking a train is approaching in plain sight, or in case on listening, the warning signals of bell and whistle, or

either of them, were plainly to be heard in time to enable him to avoid collision, then he was not in any manner justified in proceeding further toward the crossing, and if he did so under such circumstances, he was negligent;"

and that "trainmen have a right to assume that travelers on a highway approaching a railroad track, will look and listen and that they will not go onto the track into danger when it is apparent that a train is approaching, and they are entitled to continue in that assumption until the contrary becomes apparent."

Plaintiff admitted in his testimony that upon approaching the double-track crossing as he drove northward on Elm street, he saw and heard that the Griswold flasher signals, which were at the southeast and northwest corners of the crossing, were in operation to signal the approach of a train. But he claims that he thought they were out of order because they were in continuous operation when he drove southward over the crossing ten or fifteen minutes earlier and got out of his car to look, but saw that there was no train approaching. He claims that when he returned to go northward he stopped with the front of his car up to the stand of the Griswold flasher signal at the southeast side of the crossing, which was about seventeen feet south of the south track and twenty-eight feet south of the north track. He admits that, with his car near to the south track, he could look to the east and see lights beyond the depot, which was about one thousand feet; but claims that he saw and heard nothing. He testified that before he saw the snowplow coming he put his car in low and started up; that at ten miles per hour it would take twenty feet to stop his car; that he had gotten his speed up to probably eight or nine miles per hour; that part of his car was on the south track, when he saw the snowplow over to his right on the north track, forty-five to fifty feet from him, and also the point of collision; and that when he saw it he immediately pulled on the wheel, and recalled that the car was actually moving to the left when he was hit by the plow. In view of the admitted

failures on the part of plaintiff to see and hear the approaching train, with its headlight lit and visible and its bell ringing continuously while his car was moving from the Griswold flasher signal stand to the south track and the train was within one hundred feet of him; and his failure, when his car was on that track and he saw the train but forty-five to fifty feet away approaching, as he claims, at twenty-five to thirty-five miles per hour, to stop his slowly moving car immediately or to otherwise control or change its course so as to avoid entering upon the north track with the train in such immediate proximity that, even if it had been going at but the legal rate of twenty miles per hour, a collision was obviously inevitable, his negligence in those respects was clearly the cause of the collision, rather than the negligence in operating the train in excess of the legal rate of the speed; and what might have happened, in the manifestly dangerous situation thus created by the plaintiff's negligence, if the train had been going more slowly would be pure speculation. As is stated hereinafter, the evidence does not admit finding that there was any negligence on the part of the trainmen in respect to maintaining a sufficient lookout, and as it appears by uncontradicted evidence that the brakes on the snowplow and the engine were applied immediately upon plaintiff's car coming into the view of the trainmen, it is evident that they could not have done anything to prevent the collision, even if the train had been traveling at merely twenty instead of twenty-five to thirty-five miles per hour. Under the circumstances herein, as was held under analogous circumstances in *Brager v. Milwaukee E. R. & L. Co.* 220 Wis. 65, 70, 264 N. W. 733; *Wilmet v. Chicago & N. W. R. Co.* 233 Wis. 335, 347, 289 N. W. 815; *Van Dunk v. Chicago & N. W. R. Co.* 188 Wis. 476, 206 N. W. 852, the speed of the train was not a proximate cause of the collision. It follows that the defendants were entitled, on their motion after verdict, to have the court change the jury's answer that negligence on the part of the trainmen in respect to

the speed of the train was a cause of the collision by substituting therefor a finding that such negligence was not a cause.

In relation to the jury's findings that there was causal negligence on the part of the trainmen in respect to maintaining a sufficient lookout, the defendants contend that the findings are entirely unsupported by the evidence. This contention must be sustained. At the time of the accident it was not raining or snowing. Although some snow was being driven about by a blustering west wind, the visibility was fair. It appears without dispute that Hancer, who was in charge of the train, sat on the left side in a cupola which was above the blade on the snowplow; that the blade was about fourteen feet high, and the cupola was about forty-five feet ahead of the engine; that Cross, defendants' roadmaster, sat next to Hancer, and Krueger, defendants' section foreman, sat on the right side of the seat; and that all of them looked ahead toward the west, but only Hancer could see over toward the left side. He testified,—

"As we were moving through town I was watching at all the crossings very close ahead, and as we came up to Elm street we were approximately 100 feet away from the crossing and I saw an automobile come from behind the house that is on the left side of the track, driving right toward the crossing. I immediately realized from the speed he was moving and the speed we were moving there was going to be an accident. I shouted to Krueger immediately to set the air. I think I said 'goose her quick.' That is an expression for giving it the whole works. There wasn't any automobile stopped between the house and the track we were on. There was one went over ahead of us when we were about around the depot somewhere, a little over a block away, a fellow crossed ahead of us and the next one was the one we hit. . . . I was watching for the crossings going through this city. I was watching to see if we saw anybody. I was watching for the same reason the engineer keeps his head out of the cab when he is running a train."

Krueger testified,—

"I had seen his lights before I was told by the superintendent to apply the brakes. Mr. Hancer didn't have time to say anything about a car being on the tracks. . . . He said 'goose her,' and when I 'goosed her,' we hit. It was all at about the same time. I applied the full emergency."

"I could see the headlight on the snowplow. It shone ahead between 1,000 and 1,200 or 1,300 feet. I didn't see any automobile; I saw the lights come. When we were just up west of the depot a car crossed Elm street crossing. Then I saw a car light. I didn't see the car itself. When I saw the light Mr. Hancer hollered 'goose her' and I throwed on the air."

In addition, Thomas, who was the fireman on the engine and sat on the left side of the cab and looked ahead and could see to the left of the track, testified,—

"As we approached the Elm street crossing I didn't see any signs of any headlights, but I could see the reflection of the flasher signals on the snow. . . . When we approached the crossing I saw the car come off the crossing and I knew he wasn't going to make it across ahead of us, so I jumped across the cab and put my hand on the brake valve and shoved it into emergency. I did that because I thought it was quicker to do it that way than to holler at the engineer. I couldn't say how fast the car was moving. It didn't stop on the crossing. I didn't see the car stop at any time. It came from the south."

Amend, who was the engineer and sat on the right side of the cab, testified,—

"Looking from where I sat in the engine it was a straight-away ahead for quite a ways. I could not see the light of a car from the opposite side . . . on account of the snowplow being ahead. . . . I would say you could see the light of a car standing on the crossing there 150 to 200 feet away. . . . I was looking straight ahead. . . . The reason I couldn't see anything on the left side was because up to the last 150 feet it would be obscured by the snowplow."

There is no testimony in conflict with the above in relation to the lookout maintained by the trainmen, and the testimony of Hancer and Thomas that they did not see plaintiff's car stop at any time in approaching the track is corroborated by the testimony of two disinterested pedestrians who saw plaintiff's car as it passed them and continued toward and onto the tracks without stopping. ·Consequently, the record does not admit of the jury's findings that the trainmen were negligent in respect to maintaining a lookout and that such negligence was a cause of the collision, and, therefore, the defendants were entitled, on their motion after verdict, to have the court substitute for the jury's answers to that effect a finding that the trainmen were not negligent in that respect.

In view of the above-stated conclusions as to the absence of any causal negligence on the part of the trainmen, there is no occasion to review errors assigned by plaintiff in respect to other rulings by the court during the trial and on motions after verdict, which do not affect and are not involved in the consideration of the matters upon which those conclusions are based; and as the defendants are entitled to judgment dismissing the complaint because of the absence of any causal negligence on the part of the trainmen, the judgment under review must be affirmed.

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied, with $25 costs, on June 1, 1942.