DE WILDT, Administratrix, Respondent, vs. THOMSON, Trustee (CHICAGO & NORTH WESTERN RAILWAY COMPANY), Appellant.

*October 13—November 10, 1942.*

*John F. Baker* of Milwaukee, for the appellant.

*Gerard H. Van Hoof* of Little Chute, for the respondent Nellie De Wildt.

For the respondent Home Mutual Casualty Company there was a brief by *Edward J. Byrne* and *Robert L. Spanagel,* both of Appleton, and oral argument by *Mr. Byrne.*

FRITZ, J.    The judgment from which the defendant-appellant, Charles M. Thomson, trustee of the Chicago & North Western Railway Company, appealed is for the recovery of damages for injury and the death of Sylvester De Wildt as the result of a collision between a passenger train and an automobile which plaintiff charges was caused by the combined negligence of Gaylord Lund, the engineer operating

the train as appellant's employee, and of Martin Vanden Hogan, the driver of the automobile on the front seat of which De Wildt was riding as a guest. Both were fatally injured. It is undisputed that the collision occurred on an afternoon in January on a grade crossing, at right angles of appellant's railroad track and a county trunk highway in the outskirts of the village of Kimberly. The train, consisting of the locomotive and three cars, was traveling eastward and the automobile was traveling northward. De Wildt and Vanden Hogan resided in the vicinity and were familiar with the ,crossing and the nature of the traffic. The train, which was operated on the same schedule for many years, was within three or four minutes of being on time. It was coasting somewhat downgrade at about thirty to thirty-five miles per hour, but the speed limit under sec. 192.29, Stats., was fifteen miles per hour at such places. There was no wind and the visibility was good, although it was cloudy. As the train was approaching, the locomotive's bell was sounded continuously and its whistle was blown almost continuously for the last one-quarter mile before reaching the crossing. No other automobile or train was involved. From along the highway there were intermittent views along the track, in the westward direction from which the train was coming, while an automobile was approaching to a point two hundred feet south of the track. Proceeding northward from that point, unobstructed views westward from points in the center of the highway to points eight feet above the rail were as follows:

From 200 ft. south of the crossing, 150 ft. westward
" 150 "                                    395 "        "
" 125 "                                    895 "        "
" 100 "                                    1000 "       "
"  50 "                                    1245 "       "
"  25 "
and all points closer                      4000 "       "

On a trial of plaintiff's action and a companion action to recover damages for Vanden Hogan's death, the jury by a

special verdict found that the engineer Lund was not negligent in respect to (1) lookout and (2) management and control, but (3) that the speed of the train (in excess of the statutory limit of fifteen miles per hour) was a cause of the collision; that Vanden Hogan was causally negligent in respect to (1) lookout, (2) control and (3) listening for the train, but (4) not negligent in respect to speed; and that Vanden Hogan's negligence was sixty-five per cent as compared to Lund's negligence of thirty-five per cent of the total causal negligence. On this verdict the court entered judgment dismissing Vanden Hogan's complaint, but granted judgment for the recovery of damages from appellant and Vanden Hogan's insurance carrier for the injury and death of De Wildt.

On this appeal appellant contends that the speed of the train, which was the only respect in which the jury found the engineer negligent, was not a proximate cause of the collision, and that therefore the court erred in denying appellant's motion for judgment notwithstanding verdict. For the consideration of that contention, the following matters must be noted, in addition to the facts stated above. As De Wildt and Vanden Hogan were killed in the accident and there were no other eyewitnesses than the engineer, Lund, he was the only one who could testify as to how the accident happened. When he first saw the automobile, it was one hundred twenty-five feet south of the crossing, and the front of the engine was between one hundred fifty and two hundred feet from the crossing. He testified that the automobile was traveling faster than the train,—"too damn fast to come to an intersection. . . . There was a question in my mind as to whether he would be able to stop." In answer to questions by the court he testified as follows:

"The Court: . . . Do I understand from the first time you saw that car, 125 feet distant from the track, going at what you call a damn fast rate of speed, that right from then onward you assumed that he was going to hit the train? A. No, I wouldn't say that. I wasn't certain.

"The Court: Well, did you think he was going slowly enough so he could stop? *A.* I have seen cars come up pretty fast—but I was certain at 50 feet from the crossing that he wasn't going to stop.

"The Court: When you saw him 125 feet away from the track what did you do first, blow your horn or— *A.* Successive short blasts of the whistle.

"The Court: Then about how long before you applied the brakes? *A.* A matter of a few seconds. We will say 50 feet from the crossing."

Lund testified further that at that time the car was also fifty feet from the crossing and traveling about the same speed as the train, and that just prior to the collision it turned somewhat to the right, and when it got on the tracks it was struck on the left side by the train and thrown to the northeast, and the train stopped in four hundred feet. On cross-examination Lund also testified that he had been a railway engineer for over thirty-seven years, and in his judgment the distance in which he could stop the train, going at thirty to thirty-five miles per hour under the existing conditions, would be around four hundred feet. To a question by plaintiff's counsel as to the distance in which he could have stopped the train with the use of the emergency brake, going at fifteen miles per hour but otherwise under the same conditions, Lund answered,—

"I wouldn't like to say. I never had occasion to use the emergency brake on a three-car passenger train at fifteen miles an hour. . . ."

Subsequently, after cross-examination conducted by the court in chambers, and the resumption of the trial before the jury and the overruling of appellant's objections to the competency of the witness and the testimony to be given, Lund testified, upon being asked in what distance he could stop the train going at fifteen miles per hour but otherwise under the same conditions, "I would say between 75 and 125 feet." In

view of this testimony the court, in subsequently denying appellant's motion for judgment notwithstanding the verdict, said,—

"We therefore have a situation in which it is uncontradicted that had the defendant been traveling at a lawful rate of speed he would have and could have stopped his train before coming in contact with the automobile. Counsel for the defendant cites a great number of cases in which our supreme court held that there was no causal connection between the speed of the train and the collision. In none of these cases, however, was the factual situation analogous to this case. The material respect in which they differ in is that in this case it is unquestioned that the engineer saw the car while he was at a sufficient distance from the highway, to have stopped his train had he been going at a lawful rate of speed; that at that time he realized that the car was going at a speed from which it appeared that it was not going to stop before crossing the railroad tracks."

Appellant contends that the evidence does not admit of those conclusions. Upon due consideration thereof, it is obvious that the court's conclusion, that the material respect in which it believed the situation in the case at bar differed from the situation in the cases in which there was held by this court to be no causal connection between the excessive speed of the train and the collision, was based upon the court's belief that the evidence admitted finding that Lund realized, at the time he saw the automobile while he was still a sufficient distance from the crossing to have stopped the train,—which would have had to be at least seventy-five to one hundred twenty-five feet, if the train had been going at fifteen miles per hour,— that the automobile was traveling at a speed from which it appeared that it was not going to stop before crossing the track. In that belief the court was in error. The undisputed testimony on that point is that it first became apparent to Lund that the automobile was not going to stop when it reached a point fifty feet from the crossing, and the train was

approximately the same distance therefrom; and that Lund then immediately applied his brakes and tried to stop. And by the jury's findings that Lund was not negligent in respect to either lookout or management and control, it was established that he saw the automobile timely and properly managed and controlled his train. Although there was Lund's testimony that when the engine was one hundred fifty to two hundred feet from the crossing he first saw the automobile and that it was coming "too damn fast to come to an intersection," and there was a question in his mind whether the driver would be able to stop, there was no proof that Lund knew or realized, or that it had become apparent to him, prior to the time the engine was about fifty feet from the crossing, that the automobile was not going to stop before crossing the track. Under those circumstances there are applicable in this case the propositions that,—

"It is not to be expected that railway trains can be stopped every time a person appears at a place where he may thereafter by his own act place himself in a place of imminent danger. As the trial court instructed the jury, the employees of the defendant have a right to assume just the contrary." *Dretzka v. Chicago & N. W. R. Co.* 216 Wis. 111, 116, 256 N. W. 703.

". . . trainmen have a right to assume that travelers on a highway approaching a railroad track, will look and listen and that they will not go onto the track into danger when it is apparent that a train is approaching, and they are entitled to continue in that assumption until the contrary becomes apparent." *Roswell v. Chicago, M., St. P. & P. R. Co.* 240 Wis. 507, 514, 2 N. W. (2d) 215.

In the case at bar the legal cause of the injury sustained by De Wildt in the collision was clearly the negligence of Vanden Hogan. The speed of the train had nothing to do with his failure to stop his automobile, and there is no evidence from which it can be inferred that he was in any way misled by the speed of the train or that he would not have driven his

automobile in front of the oncoming train at whatever speed it was traveling. What might have happened if it had been going more slowly is pure speculation. *Brager v. Milwaukee E. R. & L. Co.* 220 Wis. 65, 264 N. W. 733; *Wilmet v. Chicago & N. W. R. Co.* 233 Wis. 335, 289 N. W. 815; *Umlauft v. Chicago, M., St. P. & P. R. Co.* 233 Wis. 391, 289 N. W. 623; *Roswell v. Chicago, M., St. P. & P. R. Co., supra; Dretzka v. Chicago & N. W. R. Co., supra.* It follows under the principles applied in those cases that appellant was entitled to have the court grant his motion for judgment notwithstanding the verdict, and that consequently that part of the judgment entered herein, which provides for the recovery of damages by plaintiff from the appellant must be reversed; and in lieu thereof the judgment shall provide that the complaint against appellant be dismissed.

*By the Court.*—Judgment reversed in part, and cause remanded with directions to modify the judgment in accordance with the opinion.