BELLRICHARD and another, Appellants, vs. CHICAGO & NORTH WESTERN RAILWAY COMPANY, Respondent.

*October 15—November 20, 1945.*

572

Ex. 4

Pearl St.

A-C-D-F-S. Photos taken October 27,1943-11:25 A.M. at S.Pearl St.
crossing, Janesville, Wis. Camera in about center of S.Pearl St.
facing northwest 31 ft. south of center of crossing. Train #501
on track 1100 ft. southwest of center of crossing. Auto damage &
injury to Mrs. Lisita Bellrichards & 3 children October 26,1943.

For the appellants there were briefs by *McGowan & Geffs* of Janesville, and oral argument by *Jacob Geffs*.

For the respondent there was a brief by *J. F. Baker* and *John E. Krueger,* both of Milwaukee, and oral argument by *Mr. Baker.*

WICKHEM, J. The accident out of which this case arises happened in Janesville on October 26, 1943, at 11 a. m., at the intersection of Pearl street and the tracks of defendant Railroad Company. Lisetta Bellrichard, hereinafter called "plaintiff" for purposes of convenience, accompanied by her sons, Wayne and Andrew, aged five and four, respectively, was driving a sedan north on Pearl street. It was a bright, clear day and the left, front window of her automobile was open. Her eyesight and her hearing were good. Wayne was sitting in the front seat with his mother, and Andrew was riding on the back seat. The crossing was not protected by gates or electric wigwag. North street comes into Pearl street at a point just south of the railroad crossing, but does not intersect. The tracks cross Pearl street diagonally at an angle of about forty-five degrees, running from southwest to northeast, as indicated by the panoramic view published herewith.

The train was coming from the southwest or plaintiff's left, and proceeding in a northeasterly direction. She testified that as she approached the crossing from the south, she was driving at about ten miles per hour. When she was forty feet from the tracks she looked to the left and saw and heard nothing. She looked to the right and there were no moving trains in that direction. She looked into the rear mirror to see whether there were any cars coming and none were approaching from behind. She took a view of the road ahead and saw that there were no cars ahead of her. She looked at the speedometer at that time and it showed five miles per hour. Her next view to the left was taken as the front end of her automobile came onto the tracks and she then saw the train

about one hundred sixty feet to the left. She stepped on the gas, the car gave a jump but failed to clear the track ahead of the train. The train hit the spare tire on the back of the automobile. The force of the blow turned the automobile and pitched it into a light pole on the northeast side of the tracks.

Plaintiff claims that the brakes of her car were in good condition; that she had been over the crossing before and realized that she was approaching a railroad crossing. Based upon a glance at the head end of the train as she came upon the tracks, she estimated the train's speed at sixty to seventy miles per hour. All of the other testimony indicates that the train was going from thirty to thirty-five miles per hour.

The testimony of the engineer was that he saw plaintiff when she was some eighty feet from the tracks and when the train was about two hundred feet from the crossing; that she slowed up as though to stop and then put on speed and attempted to cross ahead of the train. The testimony of the engineer is confirmed by that of plaintiff to the extent that she claims to have slowed down at about that time and that she ultimately put on speed to clear the crossing. There is a divergence as to when plaintiff accelerated the speed of her car.

The views available to persons on the highway at various points are not in serious dispute. At a point ninety feet south of the crossing, the engine of a train three hundred fifty feet from the crossing is partly visible. At sixty feet, the train is visible for six hundred feet down the track. At fifty feet, the visibility extends to eight hundred feet. At thirty feet, the view is one thousand seventy feet. At twenty-five feet, the view is two thousand six hundred feet. We consider that these figures are verities and indicate beyond question that had plaintiff looked at forty feet, as she claims she did, she could not have failed to see the train approaching. The jury, of course, established this by finding plaintiff guilty of negligent lookout and has accepted the engineer's story by finding

him free from negligence as to lookout. Hence, the fact that the train was in view and would have been discovered by adequate lookout is established by the jury in this case.

The jury also exonerated defendant as to negligence in failing to ring the bell, and it must be taken as established in spite of plaintiff's claim that she did not hear it, that the bell was rung.

The question whether the engineer sounded the whistle was not submitted to the jury, and the propriety of not submitting this will be considered later in this opinion. For the moment, however, it will be assumed that the court properly refused to submit this question. No question as to defendant's negligence in management and control was submitted to the jury and no error is predicated upon the failure so to submit. It must be assumed, therefore, either that there was no issue in this respect, or if there was, that the trial court disposed of it in accordance with sec. 270.28, Stats. We are presented initially with the question whether the negligent speed of the train was a proximate cause of the collision in view of the fact that it is the only negligence on the part of defendant found by the jury.

In dealing with this question, we consider it necessary at the outset to deal with the various contentions as to what the speed of the railroad train was. Aside from plaintiff's testimony, based upon a glance an instant before the collision, the speed of the train was put by disinterested, as well as interested, persons, at from thirty to thirty-five miles per hour. This is a clear violation of sec. 192.29 (1), Stats., which prescribes a speed of fifteen miles per hour, but not an extremely high rate of speed; indeed, it is no higher than plaintiff might reasonably expect to encounter in the case of an automobile competing for an intersection upon an ordinary highway. Plaintiff's testimony is claimed by her to raise an issue as to the speed and to require the assumption by this court that the

speed was in accordance with her testimony, namely, sixty to seventy miles an hour. There is no jury finding to this effect and we think that there was no issue on this point. Plaintiff's testimony was completely without value for the reasons pointed out in *Culver v. Webb*, 244 Wis. 478, 12 N. W. (2d) 731. She does not claim to have seen the train until a few seconds before she was hit and then only to have had a brief view of its head end. She had no testimonial qualifications as to speed, and it is impossible to create a jury issue out of such material. Plaintiff sought by evidence as to the space within which the train was stopped to prove a higher rate of speed but, without going into details, we conclude after a careful examination of the record that this evidence is inconclusive. There is no competent evidence in the record that the train was proceeding at a faster rate than thirty-five miles an hour. Plaintiff claims that this speed, however, which is more than twice the speed permitted at such crossings, was a proximate cause of the collision because, had the train been going at the legal rate, plaintiff would easily have cleared the tracks ahead of it. She relies upon the case of *Ellis v. Chicago & N. W. R. Co.* 167 Wis. 392, 402, 167 N. W. 1048, where this court said:

"A careful review of all the evidence shows that the excessive rate of speed was sufficient to cause the collision. It quite clearly appears that had the train been running twelve miles per hour only, the streetcar would have passed the zone of danger several seconds before the engine reached the point of collision and no collision would have occurred."

The statement in the *Ellis Case, supra,* taken out of its context and applied literally as a universal rule, is obviously subject to the criticism that it is an application of the "but for" rule. As pointed out in *Umlauft v. Chicago, M., St. P. & P. R. Co.* 233 Wis. 391, 289 N. W. 623, the *Ellis Case* does not contain an adequate statement of the facts upon which the decision

is based.  In the *Ellis Case* the train came around a sharp curve beyond which an observation could not be made by those preparing to cross the railroad right of way.  A train coming at a lawful rate of speed would not interfere with a crossing of the tracks if it were just coming into sight from the curve. Further, at such speed it could be stopped within this distance to avoid an accident.  The court's reference was to the peculiar situation existing in that case.  Had the engineer been proceeding at a lawful rate of speed he could have seen plaintiff's car in time to stop, or if no train was in sight as far down as the curve, plaintiff could legitimately consider that he had time to drive upon and across the tracks in safety.  That speed standing alone cannot be the cause of a crossing accident has been held in the following cases: *Van Dunk v. Chicago & N. W. R. Co.* (1926) 188 Wis. 476, 206 N. W. 852; *Brager v. Milwaukee E. R. & L. Co.* (1936) 220 Wis. 65, 264 N. W. 733; *Wilmet v. Chicago & N. W. R. Co.* (1940) 233 Wis. 335, 289 N. W. 815; *Umlauft v. Chicago, M., St. P. & P. R. Co., supra; Roswell v. Chicago, M., St. P. & P. R. Co.* (1942) 240 Wis. 507, 2 N. W. (2d) 215; *De Wildt v. Thomson* (1942), 241 Wis. 352, 6 N. W. (2d) 173.  The illegal speed of the train may, as in the *Ellis Case,* enable it to reach the crossing from behind a curve or other obstruction beyond which plaintiff may have no reason to expect that a train will interfere with his crossing, or as in the same case, the illegal rate of speed may disable the engineer after coming in sight of the crossing from bringing his train to a stop upon observing the peril of plaintiff.

In some cases, as for example that of *Webster v. Roth,* 246 Wis. 535, 18 N. W. (2d) 1, the extremely high speed of the train, combined with its silent operation and failure to sound appropriate warnings, may contribute to cause a collision either by inducing plaintiff to take an insufficiently extended view of the tracks or by misleading plaintiff as to the train's actual speed.  Where, however, (1) the train was in sight

for a sufficient distance so plaintiff could make a timely and adequate appraisal of the situation; (2) its speed did not mislead plaintiff (either because it was not extremely high, because the train did not emerge from a curve or obstruction beyond which plaintiff could not see, or because plaintiff did not see it or form any judgments based on its apparent speed); (3) there were no defaults on the part of its operators which could in combination with the speed of the train produce a dangerous situation such as existed in the *Webster Case, supra,* the violation of the statutory rule as to speed cannot be held to constitute a cause of the accident. When, in addition to the foregoing, it is established that the engineer observed plaintiff slow down as though to give right of way to the train and that later plaintiff drove upon the tracks at a time when the train could not have been stopped, even if it had been proceeding at a lawful rate of speed, it is completely demonstrated that the speed of the train was not a cause of the collision, and that in fact, plaintiff's own act caused the accident. We consider that these observations apply to the record in this case and bring it within the decisions of this court in the *Van Dunk, De Wildt,* and *Brager Cases, supra.* In all of these cases, under circumstances analogous to those here, it was held that the speed of the train was not a proximate cause of the injury. In the *Van Dunk Case* (p. 485) it was pointed out that "what might have happened if the train had been going more slowly would be pure speculation." In the *Wilmet Case* (p. 347) it is said that "the train crew could have done nothing to prevent the collision whether the train had been traveling twenty miles an hour, forty miles an hour, or fifty miles an hour."

All of the foregoing has been decided upon the hypothesis that the court properly declined to submit the question to the jury whether the whistle of the train was sounded at the crossing. Without determining the materiality of our decision in this respect, we conclude that the trial court ruled properly on

this point.    Plaintiff asserts in her brief that she looked and listened when forty feet from the crossing and heard no bell or whistle.    She claims that this is something more than negative testimony, within the rule as stated by this court in *Zenner v. Chicago, St. P., M. & O. R. Co.* 219 Wis. 124, 126, 262 N. W. 581:

"While purely negative testimony is not enough to raise an issue of fact for the jury, testimony negative in form may, under certain circumstances, be considered to be positive in substance and sufficient to raise an issue of fact.    In order to do so, however, it must appear that the witness so testifying was in a position where he could hear or see; that his attention and his senses were directed to ascertaining whether the event was about to occur, and that the event did not happen."

A careful review of plaintiff's testimony, however, indicates that she did not claim to have listened for the train at forty feet from the crossing, and her testimony that she did not then hear it is negative under the rule.    In addition, it should be pointed out that plaintiff never denied that the whistle was blown.    She simply testified that it was not blown until she was on the tracks and the train one hundred fifty feet away from her at which time three long blasts of the whistle were sounded.    If plaintiff's testimony that the train was as close to her as one hundred fifty feet at the time when she first saw it is true, then her testimony that three long blasts of the whistle were thereafter sounded is physically impossible.    It is obvious that the blasts of the whistle occurred considerably further back than her testimony would indicate and that her testimony is therefore not in conflict with that of other witnesses who testified that the whistle was properly sounded. Hence, we are forced to conclude that the trial court rightly declined to submit this question to the jury because there is no evidence to the effect that the whistle was not blown at a proper place before the crossing.

From the foregoing, we conclude that there is no evidence to support the jury's finding that there was causal relation between the speed at which defendant's train was operated and plaintiffs' injuries.

It now becomes necessary to deal with such errors assigned by plaintiff as bear upon the issues heretofore determined. The first deals with the refusal of the court to admit certain measurements offered by plaintiff. Plaintiff, shortly before the trial, accompanied by other persons, marked the spot where the train was when she came upon the crossing. This distance was measured and found to be one hundred fifty-nine feet. The evidence was excluded upon objection. We are of the view that the exclusion was not prejudicial error. Plaintiff testified several times as to the distance of the train from the crossing when she drove upon the tracks, and this conformed approximately to the measurements. The only claim that plaintiff could base upon the measurements would be that they somehow raised the dignity of her testimony from that of an estimate to a more precise type and one entitled to greater weight. Since, however, one point in the measured line was based upon her estimate of where the train was, when she came upon the tracks, the measurement did not accomplish this result. In any event, we are of the view that plaintiff was not prejudiced by the exclusion.

The next errors assigned may be considered together. (1) Plaintiff had been cross-examined by defendant as to certain statements made to defendant's claim adjuster in regard to the collision. On redirect examination, plaintiff sought by question to elicit other portions of the conversation and objections to these questions were sustained. (2) Plaintiff sought to elicit by question that the main track of defendant railroad, a block further up the street, was guarded by a watchman. Objections to this line of questioning were sustained. In neither case did plaintiff make an offer of proof, and we are unable upon the record to determine the materiality of the

testimony plaintiff desired to introduce or the prejudice that might have resulted if it was erroneously excluded. In the absence of an offer, we are not in a position to consider these assignments of error. In connection with this see *Pfister v. Milwaukee Free Press Co.* 139 Wis. 627, 121 N. W. 938, and *Wunderlich v. Palatine Fire Ins. Co.* 104 Wis. 382, 80 N. W. 467.

It is next objected by plaintiff that the trial court erred in instructing the jury. The following instruction was given in respect of slight want of ordinary care:

"A slight want of ordinary care is an absence of that degree of care and vigilance which persons of extraordinary prudence and foresight are accustomed to use.

"In connection with the question regarding slight want of ordinary care, you are instructed that where there is a failure to look and listen within the zone where the duty exists, such failure, unless a sufficient excuse therefor is shown, constitutes more than a slight want of ordinary care."

The first paragraph of this instruction was erroneous and this is conceded by defendant. In *Van Dunk v. Chicago & N. W. R. Co., supra,* an identical instruction was condemned by this court. However, the jury was submitted the question of lookout and found plaintiff guilty of negligent lookout. This court has several times held that failure to keep a proper lookout amounts, as a matter of law, to more than a slight want of ordinary care. *Bahlert v. Chicago, M. & St. P. R. Co.* (1921) 175 Wis. 481, 185 N. W. 515; *Van Dunk v. Chicago & N. W. R. Co., supra; Waitkus v. Chicago & N. W. R. Co.* (1931) 204 Wis. 566, 236 N. W. 531, 237 N. W. 259. The second paragraph of the instruction is criticized as carrying the implication that plaintiff did not look and listen within the zone where her duty to do so existed, but we think that this is not a valid criticism since the court plainly instructed the jury that the rule laid down in the instruction only applied "where there is a failure to look."

It is contended that the court erred in instructing the jury in substance that railroad trains can proceed only on the railroad track, cannot turn out to pass other travelers, and that therefore they are given the right of way and "the engineer is not obliged to check his speed or stop his train every time he sees a vehicle approaching which appears to be under control. The engineer has a right to assume that travelers on a highway approaching a railroad track will look and listen, up to the last opportunity before entering upon the track, to ascertain whether a train is approaching from either direction, and that they will not go on the track into danger when it is apparent that a train is approaching, and he is entitled to continue in that assumption until the contrary becomes apparent to a person exercising ordinary care, in the position of the engineer." It is contended that this instruction conveyed the idea to the jury that the engineer was not obliged to obey the statute but could maintain an unlawful speed. We see nothing in the instruction to support this contention, and furthermore, the jury did find defendant guilty of negligent speed, and no prejudice could have resulted. The instruction is in accordance with decisions of this court in several cases. In *Waitkus v. Chicago & N. W. R. Co., supra* (p. 568), this court said that "As the operation of the train cannot be accommodated to the movements of the traveler, the traveler must yield to the movements of the train." In *Crane v. Weber,* 211 Wis. 294, 299, 247 N. W. 882, it is said that "trains cannot stop within short distances and cannot turn from their course of travel." In *Clemons v. Chicago, St. P., M. & O. R. Co.* 137 Wis. 387, 394, 119 N. W. 102, it is said:

"Assumptions as to the speed of moving trains in cities may be indulged when they are not in sight, but cannot be relied upon by travelers who have a plain view of the coming train." See also *Balistrieri v. Chicago, N. S. & M. R. R.* 185 Wis. 381, 200 N. W. 650.

The most valid criticism of this instruction is that in view of the question submitted it may have been unnecessary, there being no question in the case as to negligent management and control. However, the instruction states the law accurately and was not prejudicial to plaintiff.

It is next objected that the following instruction was erroneous:

"Where numerous obstructions exist to hide the view of the observer before reaching the principal point of danger, the care required of the operator of the car increases as he approaches the principal danger point which is located upon the main track. The duty to look and listen for an approaching train before attempting to cross a railroad track is absolute. The driver of a vehicle is also presumed to have seen what was in plain sight."

It is objected that this instruction erroneously places an absolute duty upon the driver approaching a railroad track to look and listen. This has been expressly held by this court in numerous cases, notably *White v. Chicago & N. W. R. Co.* (1899) 102 Wis. 489, 78 N. W. 585; *Guhl v. Whitcomb* (1901), 109 Wis. 69, 85 N. W. 142; *Waitkus v. Chicago & N. W. R. Co.* (1931) 204 Wis. 566, 236 N. W. 531, 237 N. W. 259.

Objection is also made to the instruction that the driver of a vehicle is presumed to have seen what was in plain sight. No objection to this as an abstract statement of law is made, but it is said that it conveyed the idea to the jury that the train was in plain sight. The statement is not open to this implication.

It is contended that the court erred in instructing the jury that other things being equal, the positive testimony of one credible witness is entitled to greater weight than that of other witnesses who merely testified negatively to the fact that they did not see or hear the happening of the event positively testi-

fied to. It is objected that this is erroneous because it selects one type of evidence, classifies it, and tells the jury to give it greater weight than other evidence. This is in accordance with the rule of this court stated in *Zenner v. Chicago, St. P., M. & O. R. Co., supra; Hunter v. Sirianni Candy Co.* (1939) 233 Wis. 130, 288 N. W. 766. Since, as we have heretofore noted, plaintiff did not testify that she listened for the train, and her testimony was therefore negative in character, the instruction was correct and applicable to the state of the record. The case of *Kaufmann v. Chicago, M. & St. P. R. Co.* (1916) 164 Wis. 359, 159 N. W. 552, 159 N. W. 1067, is distinguishable because there it appeared that plaintiffs had brought themselves within the distinction heretofore noted in the *Zenner Case, supra,* and their testimony was not negative.

For the foregoing reasons it is considered that the judgment must be affirmed.

*By the Court.*—Judgment affirmed.