WILMET, Administratrix, and another, Appellants, vs. CHI-
    CAGO & NORTH WESTERN RAILWAY COMPANY and
    another, Respondents.

SMET, Administratrix, Appellant, vs. SAME, Respondents.

*December 5, 1939—January 16, 1940.*

338

340

For the appellants Ella Wilmet and Carl Carlson there was a brief by *Kaftan, Rahr & Kaftan* of Green Bay, and oral argument by *Robert A. Kaftan*.

For the appellant Emma Smet there was a brief by *Everson, Ryan & Hanaway* of Green Bay, attorneys, and *Harold M. Wilkie* of Madison of counsel, and oral argument by *Mr. E. J. Everson* and *Mr. Wilkie*.

*John F. Baker* of Milwaukee, for the respondents.

ROSENBERRY, C. J. Upon this appeal the assignments of error present three principal questions: (1) Was the negligence of the driver Smet the sole proximate cause of the collision? (2) If Smet's negligence was not the sole proxi-

mate cause of the collision were Wilmet and Carlson guilty of contributory negligence as a matter of law? And (3), Was Smet's negligence as found by the jury greater than that of the defendant Railway Company as a matter of law?

In considering what caused the collision it is necessary to have in mind the physical situation as disclosed by the maps and photographs. The depot is one thousand twenty-five feet south of the crossing in question. A part of Exhibit 4 is reproduced. This is a photograph taken at a point seventy-five feet north of the crossing facing south. Carabin lane runs in a northerly and southerly direction just west or to the right of the poles carrying telephone wires having four crosspieces. Just beyond the depot the track curves. Along the westerly side of the right of way and near the line of the telephone poles appears the shrubbery frequently referred to in the evidence.

.Exhibit 7 reproduced herewith is a photograph taken with the camera standing at the east edge of Carabin lane thirty-seven feet south of the center of the crossing facing north. The occupants of the car had this view as they approached the south line of Main street. The exact location of the shrubbery is indicated on the map by the stumps.

It appears that some time after these pictures were taken the shrubbery was cut down and removed. The most southerly clump was two hundred sixty-three feet from the center of Main street and is marked "B" on Exhibit 8. The next clump was two hundred thirty-one feet south of Main street marked "C." The southerly end of the next clump was one hundred fifty-one feet south of the center line of Main street marked "D." Between "C" and "D" there was a distance of eighty feet. The most northerly clump was eighty-three feet south of the center line of Main street and is marked

"E." Between clump "E" and "D" there was a distance of thirty-six feet. These statements are made on the basis of actual measurements, although there are estimates and opinions in the evidence not in accord with these statements.

As Smet turned from the alley into Carabin lane he was one hundred ninety feet from the point of collision. The witness Zimdars testified that when he last saw the Smet car traveling toward Carabin lane the train was not yet in sight although he had a clear view down to the depot. If the Smet car was traveling at the rate of fifteen miles per hour, or approximately twenty-two feet per second, it was nine or ten seconds away from the point of collision. If the train was traveling forty miles per hour, or approximately sixty feet per second, it was six hundred feet away from the place of collision; if the train was traveling fifty miles per hour, the highest speed mentioned, it was traveling approximately seventy-five feet per second and was approximately seven hundred fifty feet south of the point of collision, and so between the depot and the place of collision. Zimdars must have been in error when he says the train was not in sight. He checked himself by saying that he took seven steps and four or five seconds additional had elapsed when he heard the crash, so whether we take the assumed rates of speed or depend on his statement of the lapse of time, if the train was traveling at any rate of speed mentioned in the testimony, it must have been north of the depot when Zimdars last saw the Smet car. However, the material thing is that during the last sixty feet that the Smet car traveled its occupants had a clear and unobstructed view to the south of at least nine hundred feet. Assuming that in the last three seconds the car traveled sixty feet, the train traveling fifty miles per hour would have traveled two hundred twenty-five feet and must therefore have been in plain sight during that time. In addition to that it is undisputed that the bell was ringing, the whistle was being blown, the engine was emitting a volume of smoke, the wigwag was operating, and it was a bright, clear morning.

The testimony of the fireman and head brakeman is that they saw the car at a point about one hundred feet south of Main street; that they continued to watch it, supposing that it would stop or turn to the left. At the instant they observed that the car was turning right or east they signaled the engineer and the train was stopped with all possible speed. At a time when the Smet car might have stopped and an observation been made and at a point where so far as the train crew were concerned they had a right to assume it would stop, it was in a place of safety, if the train had been going at a speed of twenty miles an hour it would have been eighty-seven feet from the crossing; if its speed was forty miles per hour it would have been one hundred eighty feet from the place of collision.

It is the contention of the appellants here that the Railway Company was guilty of negligence because of its failure to cut the brush as required by sec. 195.29 (6), Stats., which provides:

"*View at crossings; trees and brush near crossings.* Every railroad shall keep its right of way clear of brush or trees for a distance of not less than three hundred thirty feet in each direction from the center of its intersection at grade with any public highway, and for such further distance as is necessary to provide an adequate view of approaching trains, from such highway. . . ."

Violation of a regulatory statute by one upon whom a duty is imposed, although the violation may be an act of negligence, does not give rise to a cause of action for an invasion of an interest of another unless the interest invaded is one which the enactment is intended to protect. *Osborne v. Montgomery* (1931), 203 Wis. 223, 240, 234 N. W. 372; Restatement, Torts, § 286.

Our first inquiry then is, Were the occupants of the Smet car within the class of persons whose interests were protected by the statute? The statute expressly provides that the clearing away of brush and trees shall be done so as to

provide an adequate view of approaching trains from such highway. The highway referred to is the public highway which crosses a railway at grade. It is manifest that the interest sought to be protected is that of the travelers upon an intersecting highway. The slightest consideration must show this to be true. A highway not intersecting the railway at grade can never become a source of danger or involve a risk of harm to persons traveling upon it. The statute therefore had no application to the occupants of the Smet car until they reached Main street, which was in this case the intersecting highway. When they reached Main street the evidence is undisputed that from that point on they had an unobstructed view of the railway track to the station, a distance of one thousand twenty-five feet. So that it clearly appears from the evidence in this case that failure to cut away and clear the brush had no causal relation to the collision. It is not claimed that the failure to cut and clear away the brush was negligence under the common law. The occupants of the car not being within the class protected by the provisions of the section, violation of the statute cannot be assigned as a ground of negligence. See comment and illustrations, Restatement, Torts, § 286, already cited.

Both upon reason and authority, the trial court correctly held that the presence of the brush and shrubbery in violation of the statute had no causal connection with the injuries sustained by the plaintiffs.

The trial court was of the view and so held that the negligence of Smet was the sole legal cause of the collision and therefore of the injuries sustained by the plaintiffs. The plaintiffs contend that in reaching this conclusion the court asserts the last-clear-chance doctrine which has been expressly repudiated in this jurisdiction. See *Switzer v. Detroit Investment Co.* (1925) 188 Wis. 330, 206 N. W. 407. This contention involves a misapprehension of the nature and purpose of the last-clear-chance doctrine. In Restatement, Torts,

§ 479, comment *a* on clause (a), occurs the following statement:

"The rule stated in this section is applicable only when the plaintiff has negligently placed himself in a position of peril from which he cannot, at the time of the accident, extricate himself. If the plaintiff's negligence consists in a failure to exercise that degree of vigilance for his own safety which as a reasonable man he is bound to exercise, he can recover, if at all, only under the rule stated in section 480 [last-clear-chance doctrine]. However, if at the time of the accident he is incapable of averting harm by the exercise of reasonable care, he can recover under the rule stated in this section, even though his inability is because of some antecedent lack of preparation since he is required to exercise with reasonable attention, care and competence only such ability as he then possesses."

Comment *e* on clause (c):

"It is not necessary that the defendant should have been negligent prior to the time at which he discovered or should have discovered the dangerous position in which the plaintiff has negligently put himself. It is enough that thereafter he fails to utilize with reasonable care the ability which he then has to avert the plaintiff's harm."

There is no claim in this case that the defendant might or in the exercise of ordinary care should have discovered that the plaintiffs were in a place of peril prior to the instant when the car turned toward or upon the railway track. As the trial court pointed out, up to the time when the plaintiffs reached the southerly side of the traveled track of Main street they were in a position of complete safety; they were subject to no risks of harm of any kind. It is undisputed that at that moment the engine was at or near the southerly boundary of Main street, and it clearly appears that the train crew could have done nothing to prevent the collision whether the train had been traveling twenty miles an hour, forty miles an hour, or fifty miles an hour. When Smet turned

his car to the right or east in violation of every duty which he owed to himself and his passengers and went upon the track in front of the approaching engine in plain sight, his conduct must be held to be the sole cause of the collision. If an actor should place a person upon the tracks of a railway company at a time when an approaching train could not be stopped, no one would have any difficulty in arriving at the conclusion that the conduct of the actor was the cause of the person's injuries, no matter at what rate of speed the train was coming or whether or not it was proceeding in violation of a statute or ordinance. While of course Smet is acquitted of any intention of harm either to himself or the occupants of his car, nevertheless when he turned in front of the oncoming train at a point in time when it was impossible in the exercise of the utmost vigilance to prevent the injuries of the plaintiffs, he is equally the cause of the collision. We are unable to distinguish upon its facts this case from *Brager v. Milwaukee E. R. & L. Co.* (1936) 220 Wis. 65, 264 N. W. 733.

It is considered that the trial court correctly held that the act of Smet was the sole legal cause of the collision. The collision having been caused solely by the negligence of Smet, we need not consider other questions raised in the case relating to the degree of care which plaintiffs Wilmet and Carlson were required to exercise under the circumstances.

*By the Court.*—Judgment in each case affirmed.