Cecelia WELLS and Robert H. Wells, Plaintiffs-Respondents-Petitioners,

v.

CHICAGO & NORTH WESTERN TRANSPORTATION COMPANY, Defendant-Respondent and Third-Party Plaintiff-Respondent,

William COTTER and Clarice Cotter, Defendants-Appellants and Third-Party Defendants-Appellants,

MARQUETTE COUNTY, Third-Party Defendant.

Supreme Court

*No. 78–278. Argued September 3, 1980.— Decided September 30, 1980.*

(Also reported in 296 N.W.2d 559.)

For the respondents-petitioners there was a brief by *Daniel G. Sandell* and *Johnson, Swingen & Sandell, S.C.,* of Madison, and oral argument by *Daniel G. Sandell.*

For defendants-appellants and third-party defendants-appellants there was a brief by *Clyde C. Cross, Karen*

*Mercer* and *Cross & Mercer* of Baraboo, and oral argument by *Clyde C. Cross.*

SHIRLEY S. ABRAHAMSON, J. The question on this review is whether the owner-occupant of land who fails to cut the brush or adequately trim the trees on certain land abutting a railroad highway grade crossing in violation of sec. 195.29(6), Stats., is subject to civil liability under the statute for damages caused to a highway traveler as a result of uncut or untrimmed brush or trees obstructing the traveler's view.

The question arises from the collision of a pickup truck driven by Robert Wells and a Chicago and North Western train at the intersection of the railroad line and Marquette County Highway F. Plaintiffs brought suit against the railroad for personal injuries and for the loss of society, companionship and consortium. The railroad answered the complaint and filed a third-party complaint against William and Clarice Cotter as owners and occupants of land abutting the intersection at which the accident occurred. The third-party complaint alleges that the Cotters failed to keep all brush cut and trees adequately trimmed in a certain triangular area of the land in violation of sec. 195.29(6), Stats. Plaintiffs then amended their complaint adding the Cotters as defendants and repeated substantially the same allegations as made against the Cotters in the third-party complaint. The theory of these pleadings is that the violation of sec. 195.29(6), Stats., renders the Cotters liable to a traveler injured as a result of the Cotters' failure to cut and trim the brush. The parties have not raised as an issue in this case whether the failure to cut and trim is negligence under the common law. The Cotters, as defendants and third-party defendants, moved for summary judgment dismissing the plaintiffs' and the third party's complaints against them. The Cotters' affi-

davit states that the land is in a rural area and in its natural condition and that the trees, bushes and vegetation are the result of natural growth.

The circuit court refused to grant the Cotters' motion for summary judgment, concluding that sec. 195.-29(6), Stats., was enacted as a safety measure to protect highway travelers, that the statute imposes a duty on abutting landowners and that the landowner who violates the statute is liable for damages caused thereby. The court of appeals reversed the circuit court, *Wells v. Chicago & North Western Transp. Co.*, 91 Wis.2d 565, 283 N.W.2d 471 (Ct. App. 1979), holding that a landowner incurs no liability to travelers on the highway injured as a result of the landowner's failure, in violation of sec. 195.29(6), Stats., to alter the natural condition of the property. We affirm the decision of the court of appeals.

Sec. 195.29(6), Stats., requires the owner or occupant of land abutting a railroad-highway grade crossing to take affirmative action, that is, to cut and trim. The wrong which the statute seeks to correct is the owner's or occupant's failure to take these steps. The owner or occupant may be relieved of the duty by the Public Service Commission. (The Transportation Commission now has this responsibility.) The only sanction stated in sec. 195.29(6) for failure to comply with the statute is a forfeiture. Sec. 195.29(6), Stats., provides as follows:

"(6) VIEW AT CROSSINGS; TREES AND BRUSH NEAR CROSSINGS; FORFEITURE. Every railroad shall keep its right of way clear of brush or trees for a distance of not less than 330 feet in each direction from the center of its intersection at grade with any public highway, and for such further distance as is necessary to provide an adequate view of approaching trains, from such highway. Every municipality shall keep the public highways within its jurisdiction clear of brush and shall adequately trim all trees within 330 feet of the center of any railroad highway grade crossing. Every person or corpo-

ration owning or occupying any land adjacent to any railroad highway grade crossing shall keep all brush cut and adequately trim all trees on said land within the triangles bounded on 2 sides by the railway and the highway, and on the third side by a line connecting points on the center lines of the railway and the highway, 330 feet from the intersection of said center lines. The commission, upon its own motion, or upon any complaint to the effect that any work required by this subsection has not been performed, after due notice and hearing, may order the corporation, municipality or person at fault to perform said work; provided, however, that if the physical conditions at any crossing are such that the performance of the required work will not materially improve the view for highway traffic, or, if unreasonable loss would be caused thereby, the commission may excuse the party in interest from performing the same. The commission may also make such order for the cutting of brush and the trimming of trees at private farm crossings as may be necessary and reasonable. If any person shall violate any provision of this section, or shall fail, neglect or refuse to obey any order made by the commission hereunder, or any judgment or decree made by any court upon such an order, for every such violation, failure or refusal such person shall forfeit not less than $25 nor more than $150."

This case, originating some ninety years after the original enactment of sec. 195.29(6), raises a question which the statute does not address, namely whether a violation of sec. 195.29(6) gives rise to a cause of action against the violator for injuries suffered. In previous cases, this court has used the guidelines set forth in the Restatement (Second) of *Torts* (1964) in determining whether the statute introduces a new ground of liability in the civil law.[1] *Kalkopf v. Donald Sales &*

---

[1] For a discussion of the effect of a statutory standard on civil liability, *see* Prosser, *The Law of Torts* (4th ed. 1971) sec. 36; Harper & Jones, *The Law of Torts* secs. 17.5, 17.6 (1956); Note, *Public Wrong and Private Action*, 27 Har. L. Rev. 317 (1913); Morris, *The Relation of Criminal Statutes to Tort Liability*, 46

*Mfg. Co.,* 33 Wis.2d 247, 254, 147 N.W.2d 277 (1967). Sections 286 and 288 of the Restatement (Second) of *Torts* (1964) set forth the legislative purposes which the American Law Institute views as consistent with or inconsistent with a court's adopting a legislative standard of conduct in negligence cases.

"Sec. 286. **When Standard of Conduct Defined by Legislation or Regulation Will Be Adopted**

"The court may adopt as the standard of conduct of a reasonable man the requirements of a legislative enactment or an administrative regulation whose purpose is found to be exclusively or in part

"(a) to protect a class of persons which includes the one whose interest is invaded, and

"(b) to protect the particular interest which is invaded, and

"(c) to protect that interest against the kind of harm which has resulted, and

"(d) to protect that interest against the particular hazard from which the harm results.

". . .

"Sec. 288. **When Standard of Conduct Defined by Legislation or Regulation Will Not Be Adopted**

"The court will not adopt as the standard of conduct of a reasonable man the requirements of a legislative enactment or an administrative regulation whose purpose is found to be exclusively

"(a) to protect the interests of the state or any subdivision of it as such, or

"(b) to secure to individuals the enjoyment of rights or privileges to which they are entitled only as members of the public, or

"(c) to impose upon the actor the performance of a service which the state or any subdivision of it undertakes to give the public, or

"(d) to protect a class of persons other than the one whose interests are invaded, or

"(e) to protect another interest than the one invaded, or

Harv. L. Rev. 453 (1933); Morris, *The Role of Criminal Statutes in Negligence Actions,* 49 Colum. L. Rev. 21 (1949); James, *Statutory Standards & Negligence in Accident Cases,* 11 La. L. Rev. 95 (1950).

"(f) to protect against other harm than that which has resulted, or

"(g) to protect against any other hazards than that from which the harm has resulted."

Sec. 874A of the Restatement (Second) of Torts (1964) which is supplementary to sections 286 and 288 provides that "When a legislative provision protects a class of persons by proscribing or requiring certain conduct but does not provide a civil remedy for the violation, the court may, if it determines that the remedy is appropriate in furtherance of the purpose of the legislation and needed to assure the effectiveness of the provision, accord to an injured member of the class a right of action, using a suitable existing tort action or a new cause of action analogous to an existing tort action." *Cf. Miller v. Portland*, 288 Ore. 271, 604 P.2d 1261 (1980).

We turn to the history of sec. 195.29(6), Stats., to determine the legislative purpose.

Sec. 195.29(6), Stats., is derived from chapter 512, Laws of 1889, "An act for the better protection of life and property on highways intersected by railways in this state." The 1889 law required every corporation owning or operating a railroad to clear its right of way "the distance of twenty rods each way . . . at the intersection of any public highway by such railway in this state." An owner of land adjacent to the intersection of a railroad and highway was required to clear certain land of brush and to trim trees up to the height of 10 feet. The sanction for the neglect or refusal of a railroad or owner to comply with the statute was $100, one-half of which was to be paid to the town prosecuting the action.[2]

---

[2] "SECTION 1. It shall be the duty of every corporation owning or operating any railroad in this state, to keep their right of way clear of locust, brush or other kinds of brush or other kinds of brush or trees growing on the same, the distance of twenty rods each way on their right of way at the intersection of any public highway by such railway in this state; provided, however,

In 1919 the law was amended in two respects. Municipalities were required to keep highways clear of brush and to trim trees within 330 feet of any railroad highway grade crossing, and the railroad commission was given the power to order the cutting or trimming or to excuse performance of the work required by the statute.[3] In 1929, sec. 195.29 (6) was further amended

that in timbered sections of country and the lands adjacent to such crossing of public highways by railways and not occupied and cleared, the said corporation shall not be liable under the provisions of this act, till the said adjacent lands be occupied or cleared, then this act to apply as stated herein. On the neglect or refusal of such railway corporation to comply with the provisions of this act, the town board of supervisors, by its chairman in the towns through which such railway corporations have right of way, shall make complaint and cause an action to be brought against such corporations in any justice court or municipal court in any county where such action may be necessary according to the provisions of this act. The penalty for neglect or refusal shall be one hundred dollars, one-half to be paid to said town prosecuting the same. And provided farther, that any person owning any land adjacent to such highway and railway the distance of twenty rods from such railway intersection of highway, shall, in like manner clear such land from brush and trim up to the height of ten feet from ground [any] trees thereon they may desire to leave for shade trees, and for neglect or refusal to comply with the provisions of this act an action to be commenced and prosecuted as above provided and the penalty therefor enforced." Chapter 512, Laws of 1889. Sec. 1814a, Stats. 1889.

[3] Ch. 467, Laws of 1919:

"SECTION 2. A new subsection is added to section 1797–12e of the statutes to read: (Section 1797–12e) 6. Every corporation owning or operating any railroad in the state of Wisconsin shall keep its right of way clear of brush or trees for a distance of not less than three hundred thirty feet in each direction from the intersection of the center line of its line of railroad at grade with the center line of any public highway, and for such further distance as is necessary to provide an adequate view of approaching trains from such highway. Every municipality shall keep the public highways within its jurisdiction clear of brush and shall adequately trim all trees within three hundred thirty feet of the center of any railroad highway grade crossing. Every person or corporation owning or occupying any land adjacent to

to read as it does today,[4] except for the forfeiture provision which was added in 1945.[5]

any railroad highway grade crossing shall keep all brush cut and adequately trim all trees on said land within the triangles bounded on two sides by the railway and the highway, and on the third side by a line connecting points on the center lines of the railway and the highway, three hundred and thirty feet from the intersection of said center lines. The railroad commission, upon its own motion, or upon complaint by any person or corporation to the effect that any work required by this statute has not been performed, after due notice and hearing as provided in section 1797–12, may order the corporation, municipality or person at fault ·to perform said work; provided, however, that if the physical conditions at any crossing are such that the performance of the required work will not materially improve the view for highway traffic, or if unreasonable loss would be caused thereby, the commission may excuse the party in interest from performing the same. The railroad commission may also make such order ·for the cutting of brush and the trimming of trees at private farm crossings as may be necessary and reasonable."

[4] Ch. 504, Laws of 1929, sec. 199 provided:

"Sec. 195.29(6) VIEW AT CROSSINGS; TREES AND BRUSH NEAR CROSSINGS. Every . . . railroad . . . shall keep its right of way clear of brush or trees for a distance of not less than three hundred thirty feet in each direction from the center of its intersection . . . at grade with . . . any public highway, and for such further distance as is necessary to provide an adequate view of approaching trains, from such highway. Every municipality shall keep the public highways within its jurisdiction clear of brush and shall adequately trim all trees within three hundred thirty feet of the center of any railroad highway grade crossing. Every person or corporation owning or occupying any land adjacent to any railroad highway grade crossing shall keep all brush cut and adequately trim all trees on said land within the triangles bounded on two sides by the railway and the highway, and on the third side by a line connecting points on the center lines of the railway and the highway, three hundred and thirty feet from the intersection of said center lines. The . . . commission, upon its own motion, or upon *any* complaint . . . to the effect that any work required by this . . . subsection has not been performed, after due notice and hearing, . . . may order the corporation, municipality or person at fault to perform said work; provided, however, that if the physical conditions at any crossing are such that the performance of the required work will not ma-

While our tracing of the historical development of sec. 195.29(6) yields no express legislative statement of intent as to civil liability, it does establish that the substantive requirement that the owner or occupant cut and trim has remained substantially unchanged since 1889. We therefore conclude that the intention of the legislature in 1889 should be the focus of our inquiry. Lacking more obvious indicia of legislative intent and purpose, we look to the conditions existing in 1889 to identify the problems which the legislature was attempting to address and the means available to the legislature to address them.

In the latter part of the nineteenth century the railroad was sweeping across the state. By December 31, 1888, there were 5,305 miles of railroad in Wisconsin. Wisconsin Blue Book (1889) p. 357. With trains and progress came property damage and injury and death to humans and animals. Injuries resulting from the railroad were numerous. A substantial number of cases involving damages by the railroad reached the Wisconsin Supreme Court. Hunt, *Law and Locomotives, The Impact of the Railroad on Wisconsin Law in the Nineteenth Century*, 74–76, 132–137, 220 n. 19 (listing cases involving accidents at intersections) (1958). "Railroad law and tort law grew up, then, together. In a sense, the two were the same." Friedman, *A History of*

---

terially improve the view for highway traffic, or if unreasonable loss would be caused thereby, the commission may excuse the party in interest from performing the same. The . . . commission may also make such order for the cutting of brush and the trimming of trees at private farm crossings as may be necessary and reasonable."

[5] Ch. 199, Laws of 1945, added the following sentence to sec. 195.29(6), Stats. 1929:

". . . If any person shall violate any provision of this section, or shall fail, neglect or refuse to obey any order made by the commission hereunder, or any judgment or decree made by any court upon such an order, for every such violation, failure or refusal such person shall forfeit not less than $25 nor more than $150."

*American Law*, 410 (1973). *See also* Malone, *The Formative Era of Contributory Negligence*, 41 Ill. L. Rev. 151, 155, 174 (1946).

As early as 1856, the Wisconsin legislature responded to this problem by enacting laws, primarily directed to the railroad, to prevent accidents. Hunt, *op. cit. supra* at pp. 74, 136. In at least one statute the legislature provided that the railroad would be liable for damages caused to animals if it failed to comply with the statutory requirement to erect and maintain fences. Ch. 268, Laws of 1860. Professor Hunt concluded, however, that "[l]egislators showed little ingenuity in departing from conventional techniques for enforcing declared policy. Fines, imprisonment and informers' statutes comprised the major part of the enforcement provisions. . . ." The 1889 predecessor of sec. 195.29 (6) is obviously part of the legislature's railroad safety program. The legislature's imposition of an affirmative duty on the owner and occupant of land to rectify even a natural condition of the land which may be harmful to persons outside the land was not a unique provision in the law of the nineteenth century. *See, e.g.*, sec. 1480a, 1889 Stats., imposing a duty to destroy noxious weeds. Scholars have noted that such legislation requiring the abatement of noxious natural conditions showed a growing social consciousness on the part of the legislature that an owner or occupant may be put to some trouble and expense to abate a dangerous condition on the land, even one of natural origin, if the gravity of the harm threatened outweighs the loss or expense imposed on the owner to remedy the deleterious situation. Noel, *Nuisances From Land in Its Natural Condition*, 56 Harv. L. Rev. 772, 791–795 (1943).

In 1889, when the legislature imposed this affirmative duty on an owner or occupant, the generally accepted rule of common law was that an owner or occupant had a duty of reasonable care to highway travelers but incurred no civil liability for physical harm caused to

persons using a public highway by the natural condition of the land.[6] Sec. 195.29(6), Stats., is not limited in application to trees and bushes planted by the owner or occupant or a predecessor. Thus if civil liability had

[6] For a discussion of the common-law rule that the owner is under no duty to remedy natural conditions and the development of exceptions to this rule, *see* Prosser, *Law of Torts* sec. 57 (4th ed. 1971); Harper & James, *The Law of Torts,* sec. 27.19 (1956); Goodhart, *Liability for Things Naturally on the Land,* 4 Camb. L.J. 13 (1930); Noel, *Nuisances From Land in Its Natural Condition,* 56 Har. L. Rev. 772 (1943); May, *Adjoining and Abutting Landowners' Liability for Injuries to Persons or Property,* 1 Will L.J. 413 (1960); McCleary, *The Possessor's Responsibilities as to Trees,* 29 Mo. L. Rev. 159 (1964); *Taylor v. Olsen,* 282 Or. 343, 578 P.2d 779, 781 (1978); *Hensley v. Montgomery County,* 25 Md. App. 361, 334 A.2d 542 (1975); Annot., *Liability of Private Owner or Occupant of Land Abutting Highway for Injuries or Damage Resulting from Tree or Limb Falling Onto Highway,* 94 ALR 3d 1160 (1979). *Cf. Brown v. Milwaukee TR Co.,* 199 Wis. 575, 588, 224 N.W. 748, 227 N.W. 385 (1929); *Plesko v. Allied Invest. Co.,* 12 Wis.2d 168, 107 N.W.2d 201 (1961); *Plesko v. Milwaukee,* 19 Wis.2d 210, 120 N.W.2d 130 (1963).

The 1934 Restatement of Torts set forth as the general rule that neither an owner nor occupant is "subject to liability for bodily harm caused to others outside the land by a natural condition of the land other than trees growing near a highway." Sec. 363. The Institute appended a *caveat* that it "expresses no opinion as to whether a possessor of land who permits trees not planted by himself or his predecessors to remain on a part of the land near a public highway is or is not under a duty to exercise reasonable care to prevent their condition becoming such as to involve a grave risk of causing serious bodily harm to those who use the highway and the burden of making them safe is not excessive as compared to the risk involved in their dangerous condition." Restatement of *Torts* sec. 363, Caveat (1934).

In the Restatement (Second) of *Torts* (1964), the Institute changed sec. 363 relating to natural conditions on the land to read as follows:

"363. NATURAL CONDITIONS

"(1) Except as stated in Subsection (2), neither a possessor of land, nor a vendor, lessor, or other transferor, is liable for physical harm caused to others outside of the land by a natural condition of the land.

been imposed in 1889 for harm caused by the natural condition of the land, it would have to have been done by statute.

Looking at the economic and social conditions and the technology existing in 1889, we conclude that the legislature did not intend to alter the generally accepted rule that the owner was immune from civil liability for the natural condition of the land. In 1889 the state was sparsely settled, much of the population in rural rather than urban areas;[7] the railroad system covered much of the state and was a principal means of transportation;[8] highways were built and maintained by local government and were in very poor condition;[9] and highway travel was

"(2) A possessor of land in an urban area is subject to liability to persons using a public highway for physical harm resulting from his failure to exercise reasonable care to prevent an unreasonable risk of harm arising from the condition of trees on the land near the highway."

*"Caveat:* The Institute expresses no opinion as to whether the rule stated in Subsection (2) may not apply to the possessor of land in a rural area."

Comment *a* to sec. 363(1), notes that "The rule stated in Subsection (1) applies although the possessor, vendor, or lessor recognizes or should recognize that the natural condition involves a risk of physical harm to persons outside the land. Except under the circumstances in Subsection (2) of this Section, this is true although there is a strong probability that the natural condition will cause serious harm and the labor or expense necessary to make the condition reasonably safe is slight."

[7] In 1900 the total population of the state was 2,069,042 of which 38.2 percent was urban, that is in centers of 2,500 or more. Nesbit, *Wisconsin: A History* 327 (1973).

[8] *See* Maps 13 and 14 relating to Population and Railroad Development, 1880 and 1900, Nesbit, *Wisconsin: A History* 325, 327 (1973).

[9] "Wisconsin achieved a comprehensive railroad system long before most roads were brought beyond a primitive condition. . . . Wisconsin entered the twentieth century with only 17 percent of her rural roads having as much as a gravel surface, and there were few all-weather roads, even between major centers." Nesbit, *Wisconsin: A History* 197 (1973).

infrequent and by horse, buggy and stagecoach, not by motor vehicles. Under such circumstances, harmful, naturally created conditions on the land may not have been readily discovered by the owner or occupant or easily abated, and the cost of remedying a natural condition of land abutting the highway might have outweighed the risk to the traveler.

We are not persuaded that the Wisconsin legislature intended in 1889 to impose liability on the landowner for physical harm caused to a highway traveler by the natural condition of the land of which the landowner might have no knowledge or reason to know and which might be difficult or costly to remedy. Civil liability for an unknown violation of a statutory duty would be too onerous a burden and would be disproportionate to the risk of harm and the value of the land. The rule of non-liability for natural conditions was a practical necessity when land was largely unsettled or uncultivated. Prosser, *Law of Torts* 354 (4th ed. 1971).

We believe the legislative purpose of the 1889 statute was to impose a duty on the abutting owner or occupant to protect the interest of the community at large rather than that of any particular class of individuals. The legislature imposed a duty on the abutting landowner to help secure the public right of unobstructed passage on the highway, not to protect any particular traveler from harm or to grant each traveler the right to maintain a tort action for damages for a violation. The statute made the landowner responsible to the state, not to any individual. We conclude the legislature intended to obtain compliance by imposing a forfeiture rather than by imposing civil liability. Restatement (Second) of *Torts* sec. 288(a)(b) and Comments *b* and *c,* sec. 288, pp. 31, 32 (1964); Prosser, *Law of Torts* sec. 36 at 192 (4th ed. 1971). We do not think the legislative purpose or intent was to allocate the economic burden of railroad accidents to the landowner in addition to or in lieu of imposing the

burden on the railroad which operates the trains, on the municipality which builds and maintains the highways, and on the highway traveler who has an obligation to use due care, and more specifically, to look and listen.

Although there have been economic, social and technological changes between 1889, when the law was first enacted, and 1945, when the law was last amended, we do not think the amendments indicate a change in legislative purpose. The plaintiffs are asking us to hold that any violation of sec. 195.29(6), which is not excused by the commission, would be negligence *per se*, that is, that sec. 195.29(6) imposes civil liability on any owner who without excuse from the commission fails to cut and trim bushes and trees even though the work would cause unreasonable loss to the owner or would not materially improve the view for highway traffic. We do not believe that even in 1945, a time of good paved highways and the motor vehicle, the legislature intended to adopt this rigid and all-inclusive rule imposing civil liability on the owner or occupant of land. Consequently, we hold that the plaintiffs do not have a cause of action for damages against the Cotters based on sec. 195.29(6), Stats.

Plaintiffs, relying on *Wilmet v. Chicago & N. W. R. Co.*, 233 Wis. 335, 289 N.W. 815 (1940), and *Bosin v. Minneapolis St. Paul & Sault Ste. Marie Railroad Co.*, 183 F. Supp. 820 (E.D. Wis. 1960), argue that sec. 195.29(6), Stats., was intended to protect the users of a public highway intersecting with a railroad grade crossing from the dangers presented by obstructions to view of that crossing created by brush or trees. Plaintiffs point out that this court, in *Wilmet*, recognized that the statute protects persons traveling on the highway intersecting the railroad, saying:

"The statute expressly provides that the clearing away of brush and trees shall be done so as to provide an

adequate view of approaching trains from such highway. The highway referred to is the public highway which crosses a railway at grade. It is manifest that the interest sought to be protected is that of the travelers upon an intersecting highway. The slightest consideration must show this to be true." *Wilmet v. Chicago & N. W. R. Co., supra,* 233 Wis. at 345–346.

The plaintiffs also note that in *Bosin* the United States District Court, having to decide whether this court would hold that sec. 195.29(6) imposed civil liability on a municipality for failing to clear its lands, analyzed the statute and the *Wilmet* decision, and concluded that the statute imposed civil liability on the municipality, ·stating:

"Section 195.29, Wis. Stats., is a safety statute. It imposes certain duties and provides for a forfeiture for violation of its requirements by 'any person.' There appears to be no uniformly applicable rule of policy under Wisconsin law with respect to the question whether or not violations of safety statutes give rise to civil liability. Instead the court looks to the presumed legislative intent in each instance. . . . .

"This court is not entirely without guidance as to the effect to be given the regulatory safety statute in question here. Another portion of this section charges a railroad with keeping its right of way clear of brush and trees. In Wilmet v. Chicago & North Western R. Co. 1940, 233 Wis. 335, 289 N.W. 815, the presence of brush and trees on a railroad right of way obstructed the view of a motorist on a highway not intersecting the railroad crossing but did not interfere with his view when traveling on the intersecting highway. The court there indicated that a violation of Section 195.29(6), Wis. Stats., can be assigned as ground of actionable negligence only by a person whose interest the statute was enacted to protect—that is a traveler upon the intersecting highway. The court there stated at page 345 of 233 Wis., at page 820 of 289 N.W.:

" 'Violation of a regulatory statute by one upon whom a duty is imposed, although the violation may be an act of negligence, does not give rise to a cause of action

for an invasion of an interest of another unless the interest invaded is one which the enactment is intended to protect. . . .'

"The statute imposes a duty which did not exist at common law. If the proof in this action establishes that plaintiffs were travelers upon the intersecting highway and their view of the crossing was obstructed by untrimmed branches of a tree within the jurisdiction of the City in violation of Section 195.29(6), plaintiffs were persons whose interest the statute was enacted to protect, and they may rely on it as a basis of liability as against the City. See Wilmet v. Chicago & Northwestern R. Co., supra." *Bosin, supra,* 183 F. Supp. at 824–825.

On review of the *Bosin* case the United States Court of Appeals for the seventh circuit affirmed the district court's holding that sec. 195.29(6) imposed civil liability on the municipality, saying: "Another portion of this same section of the statute places upon a railroad the duty of clearing brush from its right-of-way. Wisconsin has held that this portion pertaining to railroads is designed to protect travelers upon the intersecting highway. [*Wilmet, supra,* cited] The portion that requires municipalities to adequately trim trees is clearly to protect the same class of persons. The statute here in question is thus a safety measure analogous to the Wisconsin Safe Place Statute." *Minneapolis, St. Paul & Sault Ste. Marie Railroad Co. v. City of Fond du Lac,* 297 F.2d 583 (7th Cir. 1961).

We do not believe these cases are determinative of the issue before us. Neither case involved an abutting owner or occupant. *Wilmet* can be interpreted narrowly. In *Wilmet* the court did not hold that the railroad's violation of sec. 195.29(6), Stats., rendered the railroad subject to civil liability. The court apparently reasoned that, assuming that the statute does give rise to civil liability on the part of the railroad, it protects only those persons traveling on the highway intersecting the rail-

road.  Because the claimants in *Wilmet* were not travelers on an intersecting highway they were not within the class of persons that the statute was intended to protect.

Even assuming that the plaintiffs' interpretation of the *Wilmet* and *Bosin* cases and of sec. 195.29 (6) is correct and that both the railroad and the municipality are civilly liable for failure to trim trees and cut brush on their respective property adjoining a highway railroad grade crossing,[10] we need not construe sec. 195.29 (6) as rendering an abutting landowner civilly liable for an obstruction to view caused by uncut brush or untrimmed trees.  The railroad and municipality stand in a different position to the highway traveler than the abutting landowner.  As a result of the operation of the trains, the railroad is liable to the user of the highway for negligence.  The municipality maintains the highways and is civilly liable for highway defects.  Sec. 81.15, Stats. In performing their usual duties, the railroad and municipality could, without much additional difficulty or expense, inspect their property and clear obstructions. The legislature may very well have intended that the railroad and municipality be civilly liable to the traveler for a violation of sec. 195.29 (6).

Because it is not claimed that the failure to cut and clear is negligence under the common law, we do not reach this issue.

For the reasons set forth, we affirm the decision of the court of appeals, remanding the case to the circuit court for entry of judgment dismissing the complaint and third-party complaint against the Cotters.

*By the Court.*—Decision of the court of appeals is affirmed.

[10] *See* Annot., *Liability of municipality or other governmental unit for failure to cut weeds, brush, or other vegetation obstructing or obscuring view at railroad crossing or at street or highway intersection,* 42 A.L.R.2d 817 (1955).